RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0138P (6th Cir.)
File Name: 04a0138p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

v.

PALMER DONAVIN MANUFACTURING CO.; P-D MIDWEST TRANSPORT, INC.,

*Respondents.*

No. 02-2336

On Application for Enforcement of an Order of the
National Labor Relations Board.
No. 8-CA-33323.

Argued: March 10, 2004

Decided and Filed: May 13, 2004

Before: MARTIN and CLAY, Circuit Judges; MILLS,
District Judge.[*]

_____

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

---

_____

## COUNSEL

**ARGUED:** Ronald Mason, MASON LAW FIRM CO., L.P.A., Dublin, Ohio, for Respondents. Kathleen Lyon, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner. **ON BRIEF:** Ronald Mason, MASON LAW FIRM CO., L.P.A., Dublin, Ohio, for Respondents. Kathleen Lyon, Julie B. Broido, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. The National Labor Relations Board seeks enforcement of its order requiring Palmer Donavin Manufacturing Company and P-D Midwest Transport, Incorporated to cease and desist their unfair labor practices and to bargain upon request. *See In re Palmer Mfg. Co.*, 338 NLRB No. 23 (Sept. 30, 2002), *reprinted at* 2002 WL 31257992. For the reasons that follow, we GRANT the Board's application for enforcement.

I.

Palmer Donavin Manufacturing Co., an Ohio corporation, engages in the wholesale distribution of building materials. P-D Midwest Transport, Inc., a wholly-owned subsidiary of Palmer Donavin, engages in the interstate transportation of Palmer Donavin's goods. Palmer Donavin and P-D Midwest have at all relevant times been affiliated corporations, which share officers, directors, owners and supervisors.

On October 19, 2001, the International Brotherhood of Teamsters, Local Union No. 377, AFL-CIO, filed a petition

with the National Labor Relations Board seeking certification as the exclusive bargaining representative of Palmer Donavin's and P-D Midwest's ("the Respondents") driver and warehouse employees. After finding that the Respondents constituted a single employer, the Regional Director found that the "petitioned for unit is an appropriate one" and accordingly directed an election. The Respondents sought review of the Regional Director's decision, but the Board denied review.

Following the Board-conducted election in which the Union was approved as exclusive bargaining representative, the Respondents raised timely objections. In their objections, the Respondents argued that the Regional Director erred in allowing employees from two separate companies to vote as a single unit over the objection of the companies and additionally alleged that the Union engaged in misconduct during the election period.[1] The Board's Regional Director conducted an investigation, but–without a hearing–overruled both of the Respondents' objections. Thus, the Regional Director certified the Union as the exclusive bargaining representative of the Respondents' driver and warehouse employees. The Board denied review of the Regional Director's decision. The Respondents subsequently refused the Union's request to bargain.

Thereafter, the Board's General Counsel issued a complaint against the Respondents alleging that their refusal to bargain with the Union violated Section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5), (1). While admitting their refusal to bargain, the Respondents challenged the validity of the Union's certification by repeating their arguments that they do not constitute a single employer and that the Union had engaged in misconduct

---

[1]Respondents raised a third objection concerning the Board's failure to seal the ballot box after the election which is not at issue on appeal.

during the election. The Board, finding that the Respondents constituted a single employer and had engaged in unfair labor practices by refusing to bargain, granted summary judgment in favor of the General Counsel and issued an order requiring the Respondents to cease and desist their unfair labor practices and to bargain with the Union upon request. This case is now before us on the Board's application for enforcement of its order.

## II.

The Respondents, without filing a cross-appeal for review of the Board's order, repeat their earlier allegations of error and argue that this Court should reverse the Board's decision and order. First, we review the Respondents' argument that the Board erred in finding that they constituted a single employer. In reviewing this argument, we will uphold the Board's factual findings and application of law to the facts if supported by substantial evidence in the record. *NLRB v. St. Francis Healthcare Centre*, 212 F.3d 945, 952 (6th Cir. 2000).

"[N]ominally separate business entities [are considered] to be a single employer where they compromise an integrated enterprise." *Radio & Television Broad. Technicians Local 1264 v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965) (citation omitted); *see also Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993-94 (6th Cir. 1997). Four well-established criteria govern this determination: (1) common ownership, (2) common management, (3) centralized control of labor relations, and (4) interrelation of operations. *Id.* The Board held that "the Respondents constitute a single-integrated business enterprise and a single employer within the meaning of the Act." *In re Palmer Mfg.*, *supra*, 2002 WL 31257992, at *2. We agree.

Respondent P-D Midwest Transport, as a wholly owned subsidiary of Respondent Palmer Donavin, shares common

ownership with its parent. Additionally, there is substantial overlap in management and officers of the Respondents. P-D exists solely to deliver goods to Palmer Donavin customers, and its delivery trucks bear Palmer Donavin's company name. Moreover, they operate from the same facility, have the same health, life insurance and profit-sharing plans, use the same payroll system, enjoy the same work holidays, and the Respondents' employees occasionally fill in for each other. Furthermore, as the Board described, they have "formulated and administered a common labor policy; . . . have provided services for and made sales to each other; . . . have shared common advertising, . . . phones, sales, and purchasing; and have held themselves out to the public as single-integrated business enterprises." *Id.* Thus, from the foregoing, we hold that the Board's finding that the Respondents constituted a single employer is supported by substantial evidence in the record.

### III.

Second, we address the Respondents' argument that misconduct occurred during the representation election, which warranted the setting aside of the results. We will also address the Respondents' related argument that the Board erred in overruling their objections without a hearing. A party seeking to set aside the results of a representation election bears the significant burden "of demonstrating that the election was conducted unfairly." *St. Francis Healthcare Centre*, 212 F.3d at 951. To meet this burden in a claim premised upon an alleged misrepresentation, the objecting party must demonstrate that "the misrepresentation is so pervasive and the deception so artful that employees will be unable to separate truth from untruth and . . . their right to a free and fair choice w[as] affected." *Van Dorn Plastic Mach. Co. v. NLRB*, 736 F.2d 343, 348 (6th Cir. 1984). Moreover, *Van Dorn* instructs that an election should not be set aside "on the basis of the substance of representations alone, but

only on the deceptive manner in which representations are made." *Id.*

We review for an abuse of discretion the Board's determination that the election allowed the employees to exercise free choice. *St. Francis Healthcare Centre*, 212 F.3d at 951-52. As discussed, however, in conducting this review, we will uphold the Board's factual findings and its application of the law to the facts if supported by substantial evidence in the record. *See id.* at 952. Likewise, we review for an abuse of discretion whether the Board erred in refusing to grant an evidentiary hearing on the issue of whether the representation election was conducted fairly. *Id.* at 963. The Board abuses its discretion in refusing to grant an evidentiary hearing when the objections and supporting proof offered by the party contesting the election demonstrates the existence of material issues of fact as to whether a fair election was held. *Id.*; *Colquest Energy, Inc. v. NLRB*, 965 F.2d 116, 119 (6th Cir. 1992). "However, we will remand a case for an evidentiary hearing only where 'an employer's objections and supporting proofs indicate that there exist material, factual disputes with the Regional Director's report which, if proved, demonstrate that the election should be overturned.'" *St. Francis Healthcare Centre*, 212 F.3d at 963 (quoting *Colquest*, 965 F.2d at 119).

The Respondents alleged that during the election, the Union officials spread a rumor that the Respondents' counsel, Ronald Mason, had bribed the company election observer, Christopher Keiber. An affidavit filed by Attorney Mason reflects the following sequence of events. Before the election, Attorney Mason and Keiber met in an unlighted hallway where Keiber gave Mason a list of employees to review. The list included the names of employees that were going to be challenged. After Attorney Mason reviewed the list, he returned it to Keiber. Apparently, the union observer, Jeff Gilber, viewed this paper exchange from a distance. Prior to the second session of voting, an agent of the Union spoke

with Attorney Mason and Respondents' President, Ron Calhoun, and told them that "three witnesses" had seen Mason pay money to Kieber and that Calhoun "needed to remove the stench from this election as soon as possible."[2] After the voting had concluded, at the Union agent's request, Kieber produced the piece of paper which confirmed that it was only a list of employees and the Union agent publicly acknowledged this fact. The Respondents argued that the Union agent's statements demonstrated that the Union had spread false rumors during the election that bribery had occurred and that this conduct warranted the setting aside of the election.

The Regional Director, after an investigation, found that the Union agent's statements "amount[ed] to nothing more than an unfounded, misrepresentation of fact by one party's agent during the course of the election" and that they did not "rise to the level of objectionable conduct warranting the setting aside of the election." Moreover, the Regional Director concluded that there existed no evidence to demonstrate that the voters were aware of the bribery allegation and certainly there existed no evidence that this alleged misconduct "created an overall atmosphere which impaired a fair and free election." Our review of the record convinces us that the Board did not abuse its discretion in finding that the alleged misconduct did not warrant the setting aside of the representation election and that the Respondents had failed to demonstrate the existence of material issues of fact warranting an evidentiary hearing.

---

[2]The affidavit does not name the Union agent; rather, the affidavit refers to the Union agent, as the Union organizer, "name unknown." While, the Regional Director refers to the agent as Richard Kepler, it is not evident from the record at what point in the proceedings the Union agent was identified as such.

As the parties contesting the representation election results, the Respondents had the burden of demonstrating not only that a pervasive misrepresentation occurred that was so artfully drawn that the voters could not separate "truth from untruth," *Van Dorn*, 736 F.2d at 348, but also that the misrepresentation "interfered with the voter's exercise of free choice to an extent that the conduct materially affected the results of the election," *Colquest*, 965 F.2d at 120. In this case, the only evidence that the Respondents offered regarding the alleged misrepresentation was the self-serving affidavit of their counsel, Attorney Mason. Not only does this single affidavit fail to depict an egregious example of a pervasive, deceitful misrepresentation, it also fails to demonstrate that the alleged misrepresentation "interfered with any voter's exercise of free choice." *Id.* Indeed, as discussed, the Union official accused of instigating the misconduct was not even named in the affidavit.

The Respondents, attempting to excuse their lack of evidence, argue that it could not prove the extent and effect of the misconduct without a hearing because it could not compel testimony from the employees or Union officials. We find this argument utterly unpersuasive. First, it completely ignores that it was their burden to demonstrate "that the election was conducted unfairly." *St. Francis Healthcare Centre*, 212 F.3d at 951. Second, it also ignores that it was their burden to come forward with evidence that would warrant conducting a hearing in the first instance. *See Colquest*, 965 F.2d at 119. Third, even if we accept the Respondents' argument that the employees and Union officials would not voluntarily give evidence–despite the lack of any evidence to suggest that the Respondents even attempted to take advantage of such voluntary procedures–this does not explain their failure to offer the affidavit of someone other than their own attorney, such as, for example, their President, Ron Calhoun.

Finally, we find *Van Dorn* particularly instructive in this case. *Van Dorn*, as discussed, instructs that we should not set aside an election's results on the basis of representations alone, but "only on the deceptive manner in which representations are made." *Van Dorn*, 736 F.2d at 348. Here, Respondents have not alleged that the Union made the statement about bribery in a deceptive manner, only that the substance of the statement was false. For this independent reason, we find that the Board did not err in overruling the Respondents' objection to the election based upon the alleged Union rumor.

In sum, we find that the Board did not err in finding that the Respondents constituted a single employer and in refusing to set aside the representation election's results because the Respondents did not meet their burden under *Van Dorn*. Additionally, we find that the Board did not err in overruling the Respondents' objections without the benefit of a hearing because the Respondents did not meet their burden of demonstrating that material issues of fact existed as to the fairness of the representation election. *See id.* at 963; *Colquest*, 965 F.2d at 119.

Accordingly, we GRANT the Board's application for enforcement of its order.